**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**SALLY MAE MCKINNEY**                                   **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO. 4:09CV131 TSL-LRA**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                  **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff appeals the Administrative Law Judge's decision denying her application for Social Security Income and Disability Insurance Benefits. The Commissioner opposes the motion and requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

**Procedural Background**

In June 2005, Plaintiff filed applications for Disability Insurance Benefits and Social Security Income under Titles II and XVI of the Social Security Act, alleging a disability date of November 1, 2003.[1] Both applications were denied initially[2] and on reconsideration. On October 1, 2008, Administrative Law Judge David Pang ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established disability

---

[1] ECF No. 5, p.17

[2] ECF No. 5, p.17.

within the meaning of the Social Security Act.[3]   The Appeals Council denied Plaintiff's request for review on August, 4, 2009.[4]   She now appeals that decision.

## Facts and Medical Evidence

Plaintiff was 51 years old when her applications for benefits were denied.[5]  She has a tenth grade education, and her relevant work experience includes working as a bus attendant, fast-food worker, and nursery school attendant.[6]  She is 5 feet, 5 inches tall and has weighed in excess of 200 pounds since June 2003.[7]  She alleges disability due to chronic headaches, seizures, and depression, as well as the symptoms and functional limitations associated with these impairments.  She maintains, in particular, that her chronic headaches impair her ability to do sustained mental activity.

The medical evidence is described in the ALJ's decision and the parties' briefs and will not be repeated in-depth herein.  The relevant evidence includes records from Plaintiff's treating physician, Dr. Gerald Honch, and consultative examiners, Dr. James Naughten and  Dr. Christine Ransom.  In September 2004, Plaintiff reported to Dr. Honch that she was experiencing recurrent headaches everyday which were only relieved by

---

[3] ECF No. 5, pp. 17-25.

[4] ECF No. 5, p. 6.

[5] ECF No. 5-5, p. 57.

[6] ECF No. 5-2, pp. 46-52.

[7] ECF No. 5, p. 20.

taking over-the-counter medication and lying down in a dark room for 40 minutes.[8]   Dr. Honch opined that the headaches were caused by depression as they did not fit the clinical definition of migraines, and were, otherwise, without reasonable explanation.[9]   He also expressed concern that Plaintiff may be experiencing rebound headaches from the excessive use of ibuprofen.

In August 2005, Dr. Naughten performed a consultative physical examination of Plaintiff.  She reported that she had been having daily headaches which incapacitated her for two days every week.[10]   Dr. Naughten opined that the chronic headaches *may* impair Plaintiff's ability to do sustained mental activity, but noted that there had been no "definitive diagnosis" and recommended that Plaintiff undergo a psychological examination.[11]   He also noted that there was no evidence of impaired judgment or significant memory impairment.[12]   He opined further that Plaintiff had mild to moderate physical limitations in her ability to lift and carry, but had no limitations in her ability to see, hear, talk, sit, stand, walk, push, pull, reach and handle objects.[13]   State agency physicians made similar findings in their assessments of Plaintiff's physical residual

---

[8] ECF No.  5-3, p. 83.

[9] ECF No.  5-3, p. 85.

[10] ECF No.  5-3, p. 113.

[11] ECF No.  5-4, p. 1.

[12] ECF No.  5-4, p. 1.

[13] ECF No.  5-4, p. 1.

3

functional capacity in June 2004 and January 2006.[14]

Following Dr. Naughten's examination, Plaintiff was evaluated by consultative psychiatric examiner, Christine Ransom, Ph.D. Dr. Ransom diagnosed Plaintiff with major depressive disorder, mild to moderately limiting,[15] and opined that her prognosis was fair to good with continued treatment.[16] Her clinical findings also showed that Plaintiff could "follow and understand simple instructions, perform simple rote tasks, maintain attention and concentration for simple tasks, consistently perform simple tasks and learn simple new tasks."[17]

In October 2005, Plaintiff saw Dr. Honch again for complaints of chronic headaches and seizures. Plaintiff reported that she was still taking ibuprofen on a daily basis.[18] Dr. Honch explained "analgesic rebound" headaches and analgesic overuse, but noted that Plaintiff had difficulty grasping these concepts.[19] In a follow-up appointment with Dr. Honch in December 2005, Plaintiff reported that she had stopped taking ibuprofen on a daily basis and her headaches were less frequent, occurring once a week or

---

[14] ECF No. 5-3, pp. 53-58; ECF No. 5-4, pp. 57-62.

[15] ECF No. 5-3, p. 112.

[16] ECF No. 5-3, p. 112.

[17] ECF No. 5-3, pp. 111-12.

[18] ECF No. 5-3, p. 80.

[19] ECF No. 5-3, p. 80.

every other week.[20]

Plaintiff also testified that she was suffering from chronic headaches at her administrative hearing in September 2008. But when asked which impairments prevented her from working the most, she identified seizures and depression.[21] She testified that the seizures, which last about 3 minutes and usually take 20-30 minutes to recover from,[22] had progressed to the point that she was experiencing one every other day.[23] She also disclosed that she had been working for the past year at a day care center, earning $544.00 biweekly.[24]

## Standard of Review

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Fifth Circuit defines substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not

---

[20] ECF No. 5-3, p. 77.

[21] ECF No. 5-5, p. 76.

[22] ECF No. 5-5, p. 77.

[23] ECF No. 5-5, p. 76.

[24] ECF No. 5-5, p. 75.

be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citing *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).  Any findings by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

A claimant's entitlement to disability benefits hinges on whether he can establish his inability "to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).   The Commissioner reviews the evidence of disability offered by the claimant and evaluates the evidence by using a sequential evaluation.[25]  The burden of proof on the first four steps falls on the claimant; the burden of proof on the last step -- whether a claimant can perform work existing in significant numbers in the national economy -- rests with the Commissioner.  Significantly, the Commissioner only has the burden of proof on the fifth step.

### Findings of the Administrative Law Judge

After reviewing all the evidence, ALJ Pang found that although Plaintiff has the following severe combination of impairments: seizure disorder, depression, obesity,

---

[25] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantially gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

headaches, and aortic insufficiency,[26] these impairments do not meet or medically equal any Listing.[27]   He noted that notwithstanding the "reported frequency and intensity of her alleged seizure activity, which had not been definitively diagnosed,"[28]  the medical evidence did not establish a "typical seizure pattern" and offered "only vague, mostly unobserved complaints."[29]  Plaintiff's depression was also mild to moderate and had significantly improved by May 2005.  While there was evidence of aortic insufficiency, an echocardiography revealed she had "good function" and "normal findings."[30]   He also noted that the frequency and intensity of her headaches were "sporadically documented" in the record, and had decreased to the extent that "she has had no complaints of them in years."[31]  Accordingly, the ALJ found that Plaintiff's subjective allegations regarding the severity of her symptoms and their associated functional limitations impairments were not fully credible, [32] and concluded that Plaintiff had the residual functional capacity to:

> lift and/carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday with normal breaks and one unscheduled break per month of ½ hour duration. . . . [Plaintiff] is able to understand, remember, and carry out

---

[26] ECF No. 5, p. 20.

[27] ECF No. 5, p. 21.

[28] ECF No. 5, p. 24.

[29] ECF No. 5, p. 21.

[30] ECF No. 5, p. 24.

[31] ECF No. 5, p. 24.

[32] ECF No. 5, p. 23.

7

simple instructions and make judgement on simple work-related decisions in jobs where superficial and intermittent contact with the public may occur.[33]

Relying on the above residual capacity finding and the vocational testimony of James E. Moore, Ed.D., CRC, ALJ Pang determined that Plaintiff was capable of performing past relevant work as a nursery school attendant, fast-food worker, and a school bus attendant. The ALJ noted further that despite Plaintiff's allegations that she was unable to sustain full-time employment, her current work as a child care provider undermined her assertion that "her mental and physical impairments render her incapable of sustaining competitive work."[34]

## Discussion

Plaintiff argues the Commissioner's decision should be reversed or, alternatively remanded for further administrative proceedings because the ALJ failed to consider her chronic headaches in determining her residual functional capacity, and failed to consider her obesity in accordance with Social Security Ruling 02-1p. The Court finds that the ALJ's extensive assessment of Plaintiff's impairments and medical records reflects that these impairments were considered and that his opinion is supported by substantial evidence.

### A.   Chronic Headaches

Plaintiff argues substantial evidence supports her claim that chronic headaches

---

[33] ECF No. 5, p. 21.

[34] ECF No. 5, p. 24.

impair her ability to perform sustained mental activities. She contends that her medical records, coupled with the recommendations from her treating physician to lie down when she experiences a headache, support her claims of disability. She disputes the ALJ's finding that her complaints of chronic headaches were "sporadically documented" and not supported by objective medical evidence.[35]

The record reflects that Plaintiff first complained of chronic headaches to her treating physician, Dr. Honch, in September 2004. At that time, Dr. Honch believed that Plaintiff was "probably abusing nonsteroidal anti-inflammatory drugs."[36] He noted that she was taking ibuprofen "up to as much as 20 tablets a day,"[37] and advised her against the excessive use of analgesics (ibuprofen).[38] He also opined that her headaches were a "depressive equivalent," that "did not fit the clinical portrait of migraines and were, otherwise, without reasonable explanation."[39] The only other complaints of chronic headaches are reported in follow-up treatments with Dr. Honch in October and December 2005, and in a consultative examination with Dr. Naughten in August 2006. In his opinion, the ALJ notes that in October 2005, Dr. Honch advised Plaintiff that her headaches were "analgesic rebound" headaches likely caused by her taking ibuprofen on

---

[35] ECF No. 5, p. 22.

[36] ECF No. 5-3, p. 83.

[37] ECF No. 5-3, p. 83.

[38] ECF No. 5-3, p. 85.

[39] ECF No. 5, p. 22.

9

a daily basis; and that by December, Plaintiff had "abruptly stopped" and was experiencing "less frequent headaches, once a week or every other week."[40] There was also improvement in her alleged seizure activity.

Plaintiff next complained of chronic headaches during her consultative examination with Dr. Naughten in August 2006. She reported that she was experiencing them daily and they were incapacitating her for two days every week. Yet, Dr. Naughten noted that there had been no definitive diagnosis concerning Plaintiff's headaches, and no evidence of impaired judgment or significant memory impairment. As the Commissioner points out, while Dr. Naughten opined that the presence of chronic headaches *may* impair Plaintiff's ability to do sustained mental activity, he made no affirmative finding that she was so limited. Instead, he recommended Plaintiff undergo a psychological evaluation,[41] the results of which showed Plaintiff could follow and understand simple directions and instructions, perform simple rote tasks, maintain attention and concentration for simple tasks, and consistently perform simple tasks and learn new tasks. As the ALJ found, these findings undermine Plaintiff's assertion that chronic headaches impair her ability to do sustained mental activity.

In addition to the sporadic documentation, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her headaches were not

---

[40] ECF No. 5, p. 23.

[41] ECF No. 5-4, p. 1.

10

credible because they were not substantiated by any laboratory or diagnostic testing. He made the following observations:

> Opthalmological testing of March 30, 2004 showed grade 1 hypersensitive retinopathy, not currently active, but no known ophthalmic relationship to her alleged headaches. (p.24). The claimant underwent a neurological evaluation in October, 2004 that resulted in normal findings, despite her allegations of daily headaches. . . . A CT scan of the brain of October 29, 2004 showed an area of low density of the right frontal lobe without other abnormalities (p.35) and an MRI of November, 2004 revealed non-specific white matter changes, but no other abnormalities, and her headaches were determined to be unrelated to these findings (pp. 8, 15).[42]

As the ALJ's analysis makes clear, despite Plaintiff's subjective complaints, the record is devoid of any objective clinical and diagnostic findings showing opthalmological or neurological evidence supporting her claims. Accordingly, he found that Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of her chronic headaches were not credible. Whenever statements about the intensity, persistence or limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ has the discretion to make a finding on the credibility of the statements and his determination is entitled to considerable deference. *Foster v. Astrue*, 277 Fed. Appx. 462 (5th Cir. 2008); *see Gonzales v. Astrue*, 231 Fed. Appx. 322, (5th Cir. 2007) (adverse credibility determination made by an ALJ was supported by inconsistencies between claimant's testimony and documentary evidence). The ALJ's credibility findings are entitled to considerable deference and will not be disturbed here. *Newton v. Apfel*, 209 F.3d 448, 449 (5th Cir. 2000). No remand is warranted on this issue.

---

[42] ECF No. 5, p. 22.

**B.     Obesity**

Plaintiff also claims that remand is warranted because the ALJ failed to consider the limiting effects of her obesity in accordance with Social Security Ruling 02-1p. The ALJ expressly stated in his opinion that Plaintiff's obesity was being evaluated under Social Security Ruling 02-1p.[43] In determining whether Plaintiff's obesity "significantly limits her ability to do basic work activities," the ALJ observed that Plaintiff weighed 222 ½ pounds in June 2003; 221 pounds in August 2005; and 209 pounds in December 2005.[44] Still, Plaintiff complains that the ALJ failed to throughly discuss Social Security Ruling 02-1p, which provides that obesity can cause physical functional limitations with regard to "sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, crouching, manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards." SSR 02-1p. As the Commissioner points out, there is no evidence in the record from any of Plaintiff's treating physicians indicating that her obesity resulted in these functional limitations. On the contrary, the consultative physical evaluation conducted by Dr. Naughten showed Plaintiff had no limitations in her ability to walk, sit, stand, push, pull and reach; mild limitations in her ability to bend and climb; and mild to moderate limitations in her ability to lift and carry.[45] These findings were

---

[43] ECF No. 5, p. 20.

[44] ECF No. 5, p. 20.

[45] ECF No. 5-4, p. 1.

essentially corroborated by the reviews conducted by state agency physicians in 2004 and 2006, and were considered by the ALJ in his residual functional capacity assessment.[46]

Notwithstanding Plaintiff's contention that the ALJ failed to conduct a detailed analysis of how her obesity impacted her functional limitations, the Court finds he properly considered her obesity in accordance with Social Security Ruling 02-1p.  Even if the Court found that the ALJ erred as Plaintiff claims, she has not demonstrated prejudice arising from the alleged error to be entitled to relief.  *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981).  By her own account, she has been working as a child care provider notwithstanding her mental and physical impairments.  Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  No such showing has been made here.

## Conclusion

For all the above reasons, the undersigned United States Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Order Affirming the Commissioner be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

---

[46] ECF No. 5-3, pp. 53-58;  ECF No. 5-4, pp. 57-62.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed.R.Civ.P. 72(b) (as amended, effective December 1, 2009).

This the 11th day of February 2011.

/s/ Linda R. Anderson<br>UNITED STATES MAGISTRATE JUDGE